**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:21-cv-21037-JEM/Becerra

LINDA LYNCH,

Plaintiff,

v.

KILOLO KIJAKAZI,[1] Commissioner of
Social Security Administration,

Defendant.
______________________________/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT[2]**

**THIS CAUSE** came before the Court on the Parties' Cross Motions for Summary Judgment. ECF Nos. [17], [20]. Plaintiff, Linda Lynch ("Plaintiff" or "Lynch"), filed her Motion for Summary Judgment ("Plaintiff's Motion"). ECF No. [17]. Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed a Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Motion"). ECF Nos. [20], [21].[3] Plaintiff filed a Response to Defendant's Motion. ECF No. [22]. The Court must now determine whether the decision reached by the Administrative Law Judge (the "ALJ") is supported by substantial evidence and whether the correct legal standards were applied. After

[1] Although the case style originally listed Andrew Saul as Defendant, Kilolo Kijakazi is now the Commissioner of Social Security and is automatically substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [2].

[3] Although the docket reflects that Defendant filed a Motion for Summary Judgment and a separate Response, both filings are identical.

a review of the Motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **DENIED**, and Defendant's Motion be **GRANTED**.

## I. BACKGROUND

On August 15, 2012, Plaintiff filed a Title II application for disability and disability insurance benefits, alleging a disability onset date of July 11, 2012. R. at 142, 362.[4] Plaintiff's claim was denied by the Social Security Administration ("SSA") on December 5, 2012, and again upon reconsideration. *Id.* at 202, 210. After a hearing, an Administrative Law Judge ("ALJ") rendered an unfavorable decision on October 28, 2014. *Id.* at160–65. On June 6, 2016, the Appeals Council granted review and remanded the case for further proceedings. *Id.* at 171–72. On May 17, 2017, Plaintiff appeared again for a hearing before the ALJ, and on August 28, 2017, the ALJ rendered a second unfavorable decision. *Id.* at 87, 177–87. On April 23, 2020, the Appeals Council granted review and again remanded the case. *Id.* at 194–96. On September 2, 2020, Plaintiff appeared for a hearing before an ALJ, and on October 22, 2020, the ALJ rendered a third unfavorable decision. *Id.* at 20–29, 36–84. On January 28, 2021, the Appeals Council denied Plaintiff's request for review. *Id.* at 6. Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action. ECF No. [1].

### A. The SSA Hearing

Plaintiff was sixty-eight years old on the date of the hearing before the ALJ. *Id.* at 40. Plaintiff testified that from 2003 to 2012, she was an operational manager for American Airlines at the Miami International Airport. *Id.* at 41. She stated that she was responsible for ramp services, including the movement and inspection of baggage and inspection of aircraft for damage. *Id.* at

[4] References herein to "R. at __" are to the Social Security transcript, which can be found at ECF No. [12]. The page numbers to the transcript referenced herein refer to those assigned by the Court's electronic docketing system as found on the top right corner of the page.

41–44. Plaintiff testified that in this job, she walked between seven and seven and a half hours per day. *Id.* at 51. Plaintiff stated that she sometimes sat when "a plane was coming in" but that she walked the majority of the workday. *Id.* Plaintiff stated that she was often required to lift up to seventy-five pounds. *Id.* at 55.

Plaintiff stated she had a heart attack in 2010, which "greatly diminished" her ability to work. *Id.* at 49. Plaintiff testified that after her heart attack in 2010, she went on sick leave between July and October of that year and then again between November and January 2012. *Id.* at 64. Plaintiff stated that when she returned to work in 2011, her "performance levels decreased greatly." *Id.* Plaintiff stated that in 2012, after a reduction in force at American Airlines, she was furloughed given her "inability to perform at the level that was required at that time." *Id.*

Plaintiff testified that in November 2012, she had a stent placed in her heart after being diagnosed with angina. *Id.* at 66. Plaintiff stated that she had been experiencing pressure in her chest, which significantly limited what she could do in her day-to-day life. *Id.* Plaintiff stated that her chest tightness and shortness of breath were precipitated by her inability to perform at work in 2012. *Id.* at 67. Plaintiff testified that after the 2012 procedure, doctors indicated that she could not lift more than five pounds, should only walk outside in the early mornings or evenings, and should remain inside or near an air conditioner during the day. *Id.* Plaintiff noted that after 2012, she had "three or four" additional stent procedures. *Id.* Plaintiff stated that, to date, she suffers from angina and heart spasms. *Id.* at 68.

Vocational Expert Heidi Feder (the "VE") also testified at the hearing. *Id.* at 36. The VE testified that based on Plaintiff's testimony regarding her past work at American Airlines, this job was improperly categorized in past hearings as ramp manager, Dictionary of Occupational Titles ("DOT") Code 184.167-058. *Id.* at 52. The VE noted that the ramp manager title does not

adequately encompass Plaintiff's past work because it is categorized as a sedentary job that is primarily administrative. *Id.* at 52, 54. The VE stated that Plaintiff's past work is more appropriately categorized as airport utility worker, DOT Code 912.663-010, SVP 4 (manager or supervisor), heavy. *Id.* at 54.

The ALJ asked the VE to consider a hypothetical individual the same age as Plaintiff, with the same educational level, and with the same work experience, but would be limited to medium work. *Id.* at 74. The VE testified that this hypothetical individual could not perform Plaintiff's past relevant work because that work was categorized as heavy. *Id.* The VE stated, however, that this hypothetical individual could perform the following jobs: (1) patient transporter–DOT Code 355.677-014, medium duty, SVP of 2–for which there were approximately 37,000 jobs nationwide; (2) sandwich maker– DOT Code 317.664-010, medium duty, SVP of 2–for which there were approximately 44,000 jobs nationwide; and (3) hand packager–DOT 920.587-018, medium duty, SVP of 2– for which there were approximately 77,000 jobs nationwide. *Id.*

Next, the ALJ asked the VE to consider a second hypothetical individual with the same limitations as the first hypothetical but who would be limited to light duty. *Id.* at 75. The ALJ testified that this hypothetical individual would not be able to perform Plaintiff's past relevant work because it is categorized as heavy duty. *Id.* The ALJ asked the VE whether an individual would be limited to light duty if they could only lift twenty pounds, lift ten pounds frequently, and lift occasionally. *Id.* The VE responded affirmatively, stating that such individual would be limited to light duty. *Id.*

**B. Statutory and Regulatory Framework**

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff "bears the burden of proving that [s]he is disabled," and "[s]he is responsible for producing evidence in support of [her] claim." *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is "currently engaged in substantial gainful activity"; at step two, the ALJ must determine whether the claimant suffers from "severe"[5] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is able to return to his past relevant work given his Residual Functional Capacity ("RFC");[6] and if not, at step five, the ALJ must determine whether the claimant is able to perform other work as it exists in the national economy, given her age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability[,]" "[a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.

[5] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to perform basic work activities "for a continuous period of at least twelve months," or is "expected to result in death." 20 C.F.R. §§ 404.1509, 404.1522.

[6] RFC is defined as "the most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 404.1545(a).

1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

**C. The ALJ's Decision**

On October 22, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 11, 2012 through March 31, 2018, the last date insured. R. at 21, 29. In reaching this decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these claims. *Id.* at 21–22; *see* 20 C.F.R. § 416.920(a); *see also Frame*, 596 Fed. App'x at 910. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 11, 2012. *Id.* at 23. Specifically, the ALJ noted that Plaintiff's earnings records include earning after the alleged onset date, which is related to a Long Term Incentive Plan rather than income from work activity. *Id.*

At step two, the ALJ determined that Plaintiff suffers from the "severe" impairment of congestive heart failure. *Id.* The ALJ noted that although Plaintiff also alleged a depressive disorder, this impairment is non-severe because "the medical evidence establishes only a slight abnormality, or a combination of slight abnormalities, which would have no more than a minimal effect on an [Plaintiff]'s ability to perform basic work activities." *Id.*

At step three, the ALJ considered the listing requirements and determined that Plaintiff's impairments did not meet or medically equal the severity of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[7] *Id.* at 24. Next, the ALJ determined that Plaintiff's severe

[7] The Listing of Impairments is a predetermined set of "major body systems impairments that [are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience" that would render an individual disabled. 20 C.F.R.

impairments could cause the alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 26. Thus, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c).[8] *Id.* at 24.

At step four, the ALJ accepted the VE's testimony that Plaintiff could not perform her past relevant work as an airport utility worker. *Id.* at 27. At step five, the ALJ accepted the VE's testimony that Plaintiff could perform the jobs of patient transporter, sandwich maker, and hand packager. *Id.* at 28. Thus, the ALJ concluded that "considering [Plaintiff]'s age, education, work experience, and residual functional capacity, [she] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and as such, "[a] finding of 'not disabled' is therefore appropriate. *Id.* at 29.

## II. STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing

---

§ 416.925(a). An individual's impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a); *see also id.* § 416.920(d).

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

*Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In reviewing the ALJ's decision, a court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment' for that of the Commissioner." *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *3 (11th Cir. Jan. 10, 2022) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision. *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015). Even if the Court finds that "the evidence preponderates against the Commissioner's findings," the Court must affirm Commissioner's decision if the decision is supported by substantial evidence. *See* Crawford, 363 F.3d at 1158–59. In this respect, "the ALJ has a basic obligation to develop a full and fair record[,]" given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The Court also reviews the ALJ's decision "to determine whether the correct legal standards were applied." *Id.* However, no "presumption of validity attaches to the [ALJ's] conclusions of law." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## III. ANALYSIS

Plaintiff advances two arguments in support of her Motion. First, Plaintiff posits that in discounting her testimony the ALJ erred: (1) in noting that the testimony was not supported by a treating physician's medical opinion, ECF No. [17] at 7; (2) in considering records outside the relevant time period–between July 11, 2012 (the alleged disability onset date) and March 31, 2018 (the date last insured), *id.* at 8; (3) in concluding that she stopped working for American Airlines due to a layoff and not due to her medical condition, *id.*; and (4) in failing "to cite to any daily activities which conflicted with [her] testimony regarding her limitations," *id.* at 9. Second,

Plaintiff argues that she is entitled to a new hearing before a new ALJ because the Commissioner's appointment violated the Constitution. *Id.* at 10. Specifically, Plaintiff argues that because the Commissioner could only be removed for cause, his appointment was invalid. *Id.* at 10–11. Plaintiff submits that she is entitled to a new hearing because she was harmed by the unconstitutional appointment in so much as she did not receive a constitutionally valid hearing, did not receive a constitutionally valid decision, and did not receive a constitutionally valid process from the Appeals Council. *Id.* at 13.

In response, Defendant argues that the ALJ properly evaluated Plaintiff's subjective complaints in light of the objective evidence in the record. ECF No. [20] at 5. First, Defendant submits that the ALJ's conclusion was not based on a lack of medical opinion, rather it was based on the opinions of various doctors that Plaintiff was doing well and was asymptomatic. *Id.* Second, Defendant argues that it was not error for the ALJ to reference records outside the relevant time period because he did not solely rely on these records in making a disability determination. *Id.* at 8. Third, Defendant argues that the ALJ did not err in finding that Plaintiff left her previous job due to a layoff, and not medical necessity, because the ALJ's conclusion is consistent with Plaintiff's testimony. *Id.* Defendant further argues that this conclusion is not a basis for remand because the ALJ ultimately determined that she could not return to her past work. *Id.* Fourth, Defendant argues that the ALJ properly discounted Plaintiff's testimony regarding her ability to perform daily activities based on the medical analysis contained in the decision. *Id.* at 8–9.

In her Reply, Plaintiff re-states that she provided "ample testimony regarding the difficulties she was experiencing with her job when she stopped working in July 2012." ECF No. [22] at 2. Plaintiff submits that the ALJ improperly rejected her testimony based on a lack of opinion evidence from her treating physicians. *Id.* Plaintiff further argues that she is entitled to a

new hearing because "government actors exercised power they did not lawfully possess due to a constitutionally defective delegation of power." *Id.* at 3.

**A. The ALJ Properly Discounted Plaintiff's Subjective Testimony.**

Under the regulations, evidence is anything that is submitted to the Commissioner and that relates to the disability claim. 20 C.F.R. § 404.1513(a). Evidence includes objective medical evidence, medical opinions, "other medical evidence," nonmedical sources, and prior administrative medical findings. *Id.* A nonmedical source is defined as "a source of evidence who is not a medical source," including the testimony from the claimant, educational personnel, welfare agency personnel, family members, friends, and employers. *Id.* § 404.1502(e). Moreover, objective medical evidence is defined as "medical signs, laboratory findings, or both." *Id.*; *see id.* § 404.1502(c) ("Laboratory findings means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests."); *id.* § 404.1502(g) ("Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)."). The objective medical evidence in the record "must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* § 404.1529(b).

In determining whether the claimant is disabled, the ALJ must evaluate the "intensity and persistence" of the claimed symptoms by considering all evidence from medical and nonmedical sources. *Id.* § 404.1529(c). When the record contains objective medical evidence, the ALJ must

"consider it in reaching a conclusion as to whether [the claimant is] disabled." *Id.* § 404.1529(c)(2). Specifically, if a claimant purports to establish a disability through his own testimony of pain or other subjective symptoms, courts must apply a three part "pain standard." *Hollingsworth v. Comm'r of Soc. Sec.*, 846 Fed. Appx. 749, 752 (11th Cir. 2021). This standard requires: "evidence of an underlying medical condition and either (A) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (B) the objectively determined medical condition is so severe it can reasonably be expected to cause the alleged pain." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)). If the ALJ discredits the claimant's subjective testimony, then she must articulate reasons for doing so. *Id.*; *See* 20 C.F.R. § 404.1529(c)(3) ("Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled."); SSR 16-3p ("Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms.").

The crux of Plaintiff's argument is that the ALJ improperly discounted her subjective testimony regarding the claimed impairments. *See* ECF No. [17] at 4–10. However, a complete reading of the ALJ's opinion shows that the decision was well supported. First, Plaintiff argues that the ALJ erred when it discounted her subjective testimony based on an absence of a treating physician's opinion substantiating that she was disabled. ECF No. [17] at 7. In his decision, the

ALJ noted "that the record does not contain any opinions from treating or examining physicians indicating that the claimant has physical limitations greater than determined in the residual functional capacity above." *Id.* at 26. To be sure, this basis alone would be insufficient to discount Plaintiff's subjective testimony. However, the ALJ went further, articulating specific reasons in finding that the severity of Plaintiff's claimed limitations was not supported by the record. Specifically, the ALJ explained that Plaintiff's testimony was contradicted by the medical opinions of her treating physicians, Plaintiff's own statements during medical visits, and Plaintiff's noncompliance with medication regimens. *See id.* at 25–26.

As to the medical opinion of Plaintiff's treating physicians, the ALJ considered all of the medical records during the relevant time period that pertain to the treatment Plaintiff received for her cardiac condition. The ALJ first noted that between 2012 and 2014, Plaintiff treated with Dr. Alan Ackerman. *Id.* at 25. The ALJ stated that Dr. Ackerman's treatment notes during that period reflected that Plaintiff had normal cardiac functioning despite her past angioplasty and stent procedures. *See id.* Specifically, Dr. Ackerman indicated that Plaintiff's heart rate, rhythm, and sounds were normal and that her physical examination was unremarkable. *Id.* The ALJ further noted that Plaintiff treated with Dr. Sultan S. Ahmed in February 2013. *Id.* The ALJ states that although Dr. Ahmed diagnosed Plaintiff with "chronic intermittent chest pain with a history of coronary artery disease status post angioplasty and stent placement," her "[c]ardiac examination revealed normal apical impulse, heart sounds, and S1 and S2 patterns . . . no thrills or pericardial rubs," no musculoskeletal "peripheral cyanosis or edema," and "normal grip strength and gait." *Id.* In addition, the ALJ noted that Plaintiff treated with Dr. Beth R. Braver in October 2013. *Id.* The ALJ stated that Dr. Braver's treatment notes indicated that Plaintiff's heart demonstrated a "regular heart rate and rhythm without murmur and no musculoskeletal abnormalities." *Id.*

Finally, the ALJ noted that an October 2014 stress test revealed "good exercise functional capacity, normal blood pressure response to exercise, and normal heart rate recovery." *Id.* The notes considered by the ALJ encompass all of the treatment Plaintiff received for her cardiac condition. Indeed, the ALJ specifically noted that after the October 2014 notes, "[t]he record reflects no further treatment until April 2018, which is after the date last insured expired." *Id.* at 26.

As to Plaintiff's statements, the ALJ noted that Plaintiff herself had indicated that she felt well during her visits with treating physicians. *Id.* at 25. Specifically, the ALJ noted that when Plaintiff met with Dr. Ackerman between 2012 and 2014, [s]he specifically denied chest pain and dyspnea on several occasions." *Id.* In addition, the ALJ noted that during the visit with Dr. Braver in October 2013, Plaintiff "reported no recent chest pain." *Id.* As to Plaintiff's non-compliance with here medication regimen, the ALJ noted that on November 15, 2012, Plaintiff "underwent a percutaneous transluminal coronary angioplasty and stenting." *Id.* However, the ALJ noted the indication that Plaintiff admitted to being noncompliant with her medication regimen. *Id.*

In sum, the ALJ properly determined that Plaintiff's subjective testimony was not supported by the evidence in the record. The ALJ reviewed all records pertaining to Plaintiff's treatment for her cardiovascular condition during the relevant time period and found that these records contradicted Plaintiff's subjective testimony regarding the severity of her symptoms. Plaintiff does not argue that the ALJ's evaluation of these records was erroneous or that the ALJ failed to consider any specific evidence. Instead, Plaintiff makes the narrow argument, citing one sentence in the opinion, that the ALJ's decision is not supported by substantial evidence because the ALJ noted the absence of a physician's opinion regarding Plaintiff's inability to perform light work. However, in discounting Plaintiff's subjective testimony, the ALJ did much more and evaluated the record at length, specifically articulating that the record supported Plaintiff's ability

to do medium work because it did not reflect a cardiac condition as severe as Plaintiff claimed. Because the ALJ sufficiently articulated why he discounted Plaintiff's testimony and the medical evidence that failed to support her claims, his determination is supported by substantial evidence.

Plaintiff further argues that it was error for the ALJ to consider medical records outside the time period at issue, between July 11, 2012 (the alleged disability onset date) and March 31, 2018 (the date last insured). ECF No. [17] at 8. Indeed, the ALJ's opinion in this case references treatment notes from 2018 through 2020, which include Plaintiff's denial of "chest pain, shortness of breath, palpitations, headaches, or dizziness" and Plaintiff's indication that she "remained active by going for walks and frequently uses her stairs at home." *Id.* (citing R. at 703–60). Although the records from 2018 through 2020 are irrelevant for the purpose of establishing Plaintiff's disability during the period between July 11, 2012 and March 31, 2018, the ALJ merely mentioned them as another example in which Plaintiff's subjective testimony was undermined by her own statements to her treating physicians. To be sure, the ALJ did not solely rely on these records in discounting Plaintiff's testimony. As set forth above, the ALJ articulated specific reasons for discounting Plaintiff's testimony, which included a thorough review of all of the records pertaining to Plaintiff's treatment for her cardiovascular condition during the relevant time period. In doing so, the ALJ examined the medical opinions of Plaintiff's treating physicians, the objective medical evidence, and Plaintiff's statements during the relevant time period. The ALJ cited multiple records, which reflected that Plaintiff had normal cardiovascular functioning despite her medical history. Thus, the records from 2018 through 2020 are nothing more than an additional instance in which the ALJ found that Plaintiff's subjective testimony regarding her alleged severe impairment was undermined by the record. Indeed, the exclusion of these records from the ALJ's

consideration would have no effect on the conclusion that Plaintiff's testimony is inconsistent with other evidence in the record.

In addition, Plaintiff argues that the ALJ erred in discrediting her testimony that she stopped working in July 2012 because she was having difficulty performing her job after her heart attack. ECF No. [17] at 9. At the hearing before the ALJ, Plaintiff testified that after the 2010 heart attack, her ability to work "greatly diminished." R. at 49. As a result, she testified that after the heart attack, she went on sick leave between July and October of that year and then again between November and January 2012. *Id.* at 64. Plaintiff stated that when she returned to work in 2011, her "performance levels decreased greatly." *Id.* Plaintiff stated that in 2012, after a reduction in force at American Airlines, she was furloughed given her "inability to perform at the level that was required at that time." *Id.* In his decision, the ALJ noted that Plaintiff stopped working "due to a business-related layoff rather than because of the allegedly disabling impairments." *Id.* at 27. The ALJ further noted that "there is no evidence of a significant deterioration in [Plaintiff]'s medical condition since that layoff," and "[a] reasonable inference, therefore, is that [Plaintiff]'s impairment would not prevent the performance of that job, since it was being performed adequately at the time of the layoff despite a similar medical condition." *Id.* The ALJ discounted Plaintiff's testimony regarding her inability perform her past work because he determined that her medical condition had not changed since July 2012, as evidenced by her continuation of employment for two years after her 2010 heart attack. Nonetheless, the ALJ ultimately found that Plaintiff could not return to her past work at American Airlines because that job was categorized as heavy, and her RFC was limited to medium duty. *Id.* at 27–28. Accordingly, the ALJ's determination that Plaintiff stopped working at American Airlines because

she was laid off and not due to her medical condition did not affect the ultimate determination that Plaintiff could not perform her past job. As such, this argument does not support remand.

Finally, Plaintiff argues that the ALJ erred in concluding that her daily activities, as described, did not support a finding of disability because they could not be objectively verified and because they were inconsistent with the record. ECF No. [17] at 9. At the hearing, Plaintiff testified that after she stopped working in 2012, she refrained from going outside, including shopping and traveling. R at 66. In addition, Plaintiff testified that her husband does laundry and vacuums the house. *Id.* In his decision, the ALJ noted that Plaintiff reported her daily activities to be "fairly limited." *Id.* at 27. The ALJ discounted Plaintiff's testimony because the "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty" and because the degree of limitation is inconsistent with the "relatively weak medical evidence and other factors discussed in th[e] decision." *Id.* Indeed, there is no requirement that a claimant's ability to perform daily activities be substantiated by objective evidence. *See Wolfe v. Comm'r of Soc. Sec.*, No. 6:11-CV-1316-ORL-DAB, 2012 WL 3264916, at *6 (M.D. Fla. Aug. 10, 2012).

However, as previously set forth, an ALJ may discount a claimant's subjective testimony if he articulates a specific reason for doing so that is supported by substantial evidence. *See Hollingsworth*, 846 Fed. App'x at 752. As set forth herein, the Court finds that the ALJ properly discounted Plaintiff's subjective testimony regarding her claimed impairments. Specifically, the ALJ concluded that she could perform medium duty based on medical evidence that revealed she had normal cardiac functioning and based on her own statements to her doctors that she felt well. In discounting Plaintiff's subjective testimony regarding the severity of her impairments based on the medical evidence in the record, the ALJ also discounted Plaintiff's testimony regarding her daily activities because this testimony is weighed against the same medical evidence. Moreover,

Plaintiff does not challenge the RFC determination that she could perform medium work and, as such, the Court is hard pressed to conclude that the ALJ's finding in this regard were error. Accordingly, the ALJ did not err in discounting, based on the medical evidence in the record, Plaintiff's testimony that she cannot perform daily activities.

**B. Plaintiff's Constitutional Claim Fails.**

Plaintiff argues that she is entitled to a new hearing before a new ALJ because the ALJ in this case did not have constitutional authority to decide her claim. ECF No. [17] at 10. Specifically, Plaintiff argues that the Commissioner's appointment was unconstitutional because he could serve a term longer than the President's and could only be removed for cause. *Id.* at 10–11. Plaintiff argues that the ALJ who rendered the unfavorable decision in her case was not serving under a validly appointed Commissioner. *Id.* at 11. Defendant concedes that the Commissioner's appointment violates separation of powers to the extent it limits the President's authority to remove the Commissioner without cause. ECF No. [20] at 10. Defendant argues, however, that this conclusion does not support remanding this case because Plaintiff has failed to show any harm. *Id.* at 11–12.

The Supreme Court has addressed challenges based on the Appointments Clause and on the President's removal power. *See Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). In *Lucia*, the Court concluded that where a violation of the Appointments Clause has occurred, the appropriate remedy "is a new 'hearing before a properly appointed' official" that is different from the prior official. *Lucia*, 138 S. Ct. at 2055 (citation omitted). However, in *Collins*, the Court concluded that where a for-cause restriction on the President's removal power has been imposed in violation of the Constitution, a new hearing is not required. *See Collins*, 141 S. Ct. at 1787–88.

The Court explained that a statute which unconstitutionally purports to restrict the President's removal power does not automatically void actions taken by that official if there is no basis to conclude that the official lacked the authority to hold his position. *Id.* As a result, a new hearing is not the appropriate remedy unless the plaintiff can show a compensable harm, as follows: (1) "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"; and (2) "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 1789.

Here, Plaintiff argues that 42 U.S.C. § 902(a)(3), which provides that the Commissioner "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office," violates the separation of powers. ECF No. [17] at 11. Plaintiff's claim fails because the ALJ's appointment in this case was not ratified by former Commissioner Andrew Saul but was instead ratified in July 2018 by then-Acting Commissioner Nancy Berryhill. *See* ECF No. [20] at 11. "As the Acting Commissioner, Ms. Berryhill did not have statutory tenure protection, and thus, could have been removed at will at any time." *See Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *10 (S.D. Fla. May 4, 2022), *report and recommendation adopted*, No. 21-CV-21164, 2022 WL 1605318 (S.D. Fla. May 20, 2022) (citing 42 U.S.C. 902(b)(4)). Because Section 902(a)(3) was inapplicable to the Acting Commissioner, the separation of powers argument is inapplicable. *See id.*

Plaintiff's argument also fails on the merits. Plaintiff seeks a new hearing before a new ALJ, a remedy available for Appointments Clause violations *not* for violations of the President's removal power, as is the case here. In order to receive a new hearing as a remedy for removal power violations, Plaintiff must show that she has suffered compensable harm. Plaintiff states that

she has been injured because she did not receive a constitutionally valid hearing and adjudication from the ALJ and she did not receive a constitutionally valid adjudication process and decision from the Appeals Council. ECF No. [17] at 13. These generalized and conclusory claims fail to establish harm as required under *Collins*. To be sure, Plaintiff does not contend that the Commissioner who appointed the ALJ failed to fulfill any of his duties or that there is any link between the ALJ's decision and the allegedly unconstitutional removal provision. Because Plaintiff has failed to show that she suffered any harm or that the ALJ's decision was unlawful, her constitutional argument fails. *See Watson v. Kijakazi*, No. 21-CV-60516, 2022 WL 1693388, at *7 (S.D. Fla. May 3, 2022), *report and recommendation adopted*, No. 21-CV-60516, 2022 WL 1686526 (S.D. Fla. May 26, 2022) (concluding that the plaintiff's generalized claim that "he did not receive a constitutionally valid hearing and adjudication from an ALJ to which he was entitled" and that "he did not receive a constitutionally valid determination by the Appeals Council to which he was entitled" did not establish harm under *Collins* and did not entitle the plaintiff to a new hearing before a new ALJ); *Fernandez v. Kijakazi*, No. 20-22798-CIV, 2022 WL 1642708, at *10 (S.D. Fla. Mar. 24, 2022) ("[B]ecause Plaintiff fails to show that she suffered compensable harm flowing from the removal restrictions of § 902(a)(3), his motion for summary judgment on the basis of separation of powers must be Denied on its merits").

## IV. RECOMMENDATION

For the reasons stated above, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion, ECF No. [17], be **DENIED**, and Defendant's Motion, ECF No. [20], be **GRANTED**.

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN**

**(14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on July 26, 2022.

**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**